Number 22-11731, United States v. Robert Dunn. Sir, good morning. May I proceed? Yes, of course. Thank you. This is a very narrow issue on a speedy trial act that was preserved or allowed to be preserved by the court and the government on whether or not when Mr. Dunn took his plea, whether the motion to dismiss for lack of speedy trial under the act was complied with. The motion to dismiss was denied by the court, and we believe that it should have been granted. I was not the attorney at the time on any of these matters before the court, other than I was appointed by the court to represent Mr. Dunn. And we thank you, Mr. O'Donnell, for taking the case on and for representing him and your service to us as well. We really do appreciate it. Thank you, Your Honor. And I was there for his plea and the waiver when the court allowed him to waive. So, and here I am on the appeal. There were five continuances. This is a COVID-related matter. There were five continuances. Mr. Dunn was arrested on March 10th and brought before the court on March 10th, and there were five continuances that totaled either 283 days or 289 days until his indictment. The five continuances, I think each and every one of them merits some discussion, but I think the crucial one is the third continuance. And that was on May 20th. The previous two continuances, there was no written order, it was an oral order, excuse me, a non-written order. And then the last two weren't written either. So the third continuance that was granted to the government was on May 20th, and it was at the preliminary hearing. So during the COVID period, they had a preliminary hearing, they had a full hearing. I believe it was telephonically or by Zoom, and the court found that they were going to detain Mr. Dunn. At the very end of that hearing, the court on its own just issued a paper, a paperwork, laying out in detail how the government had met its burden on the preliminary hearing. And then it's a two page order. And then the very last sentence in that order dated from May 20th reads just this. Pursuant to administrative order 2020-24, the period of time from today through July 6th, 2020 is excluded under the Speedy Trial Act, and that is it. There is nothing else. There's no analysis. There is no language. Do you think that that order incorporated whatever other findings and conclusions had been set out in the prior general administrative orders? I don't, legally. And here's why, for a few reasons. There's some case law out there that says you can't just, Amar, no, excuse me, Zedner, where you can't have, or is it Larson, you can't just refer to an order, even in the court, and let it just continue. That is not acceptable. And what has to be done, it has to be done on the record, either orally or written. And it doesn't have to be simultaneous, but it has to be based on that hearing. The reasons need to be spelled out and articulated in each particular case. And this administrative order that was cited to, in this order continuing it on May 20th, it doesn't even say we are incorporating these other orders. They're just, and this order that they're referring to, 2020-24, is a few page order where the chief judge of the court just said, or laid out that he believed, or the court believed that this order covers all speedy trial issues, and that is controlling, and that his order can be incorporated, or is incorporated into all these issues. But the trial court here. What findings do you think, regardless of what order we're talking about? Yes. What findings do you think needed to be made, other than the ones that were listed? Well, I think procedurally, the court, if the substance of what was in that administrative order satisfied the speedy trial requirement, and assuming it did, the court, the trial court, the court hearing this, it wasn't even a motion to continue, it was just sort of sua sponte, done with one sentence, needed to articulate that the COVID pandemic, and what it is particularly causing at that particular time, and preventing the grand juries from sitting, that specifically, that that incident, and this pandemic specifically, is preventing the indictment from coming down, substantively, and then procedurally must say that the ends of justice would be met, and this continuance outweighs the public interest, and the defendant's interest in a speedy trial, and they must tie the facts of the pandemic to the specific reason as to why they are continuing. And you don't think Judge Moore's first administrative order did that? I believe his first, I don't want to be incorrect, I believe his first administrative order, because it gets a little confusing, because there are several, I think his first, and maybe even a second administrative order, said grand juries continue, but I don't think it was until about March 26th, perhaps, March 26th, is when there was an administrative order from Judge Moore that said grand juries are suspended, gave it a time frame, and then continued in his subsequent orders to suspend grand juries. So up until his first order referencing grand juries, there would be 16 days excluded, but that doesn't get Mr. Dunn beyond the 30 days, and the order specifically, and this is the only order on the five continuances, the May 20th one, that doesn't even use the language that other cases say are pretty much required. Um, I think it was the Amar case, where the judge did not use the ends of justice language, and although the court distinguished it slightly, you will agree all of the other orders, administrative and the magistrate orders, and Judge Altman's order, all had the ends of justice language, and it's just this one on May 20th, that didn't have it, which came at the preliminary hearing, right? That's correct. It has, and I'm reading from the order, um, that the magistrate judge says, you know, you could proceed by information, but of course, you have a right to indict, and he said, no, I want to wait for indictment, which is his right. Okay, they were willing to proceed, the prosecutor said, we'll proceed by information, but the grand jury's not in session, and so he responded, okay, he's going to write the way, wait, and have the case presented, and so he excluded the time, and he says, as you acknowledged early on, pursuant to administrative order 20-24, which did have ends of justice findings, correct? It did. But he, I will agree with you, this is the one time where the one magistrate of this hearing didn't actually use the magic words, ends of justice, but it's pretty clear, that's what he's doing here. Nobody doubts it's because of the pandemic, right? I mean, we have a lot of these cases, we don't really know why all the continuous is going on, but nobody, they talk about the pandemic in here, and say that at the conference, right, it's recorded, we have a transcript, right? But on the preliminary hearing, I don't believe they do. On the video conference? At the preliminary hearing, they may, Your Honor, I'm not aware. But during the hearing, the prosecutor said he was waiting for the quote, waiting for the grand jury to reopen, and said you can proceed with an information pending that, but, and it's fine, but Dunn said he wanted to, or rather his lawyer said, no, we want to wait for indictment, they said fine, and so the magistrate entered an order, excluding the time from May 20th to July 6th, pursuant to administrative order 20-20, which was the most recent order that had continued grand jury sessions due to the pandemic. Is that about right? But I agree with you, it doesn't, that, in that order, it doesn't, we have to read it with the administrative order. Well, I, and you're saying, no, you can't do that. It didn't incorporate, use magic words, you're saying, it had on its own, had to have the end of justice. Not only, you know, the one court, Amara said, they're not necessarily magic words, but they're extremely bothered, it seemed like, by the fact that the judge didn't say that, and didn't tether those words to his finding, and in that court, they even said, look, why, the judge continued the case, and he probably, they're sort of saying he probably could but he didn't do it correctly. And then if you look at the progeny of the case in Zedner. Don't you think that these pandemic orders stand kind of uniquely alone, because everybody knows that why they're being intended is the pandemic, as opposed to the individual circumstances? Well, I think that's how they were treated, but the courts have spoken loudly that on the ends of justice, on the ends of justice continuances, that it's, it's so arbitrary, and it's meant to be flexible, that they are unforgiving on the procedural aspects, because if they are forgiving on the procedural aspects, it'll lose what it is meant to do. And that is to keep everybody, the defendant, the court, the government, these cases moving forward, so the public can have one more question. Let's ignore the magistrate judge's five orders, let's just go to the administrative blanket orders. As I understand, you say that's not good enough either, right? According to the case law, I would say no. An administrative order, I think it's unprecedented for an administrative order. To be a blanket order, solve criminal cases. Two issues, a blanket order, the court has ruled is unacceptable. Well, it's more than that, because they say if we designate individual magistrates to do it too. And they didn't here, and they should have, and that, just like if a defendant doesn't object, it might sound silly to the rest of the world. He never objected throughout this, but we can't use that. I mean, he agreed to every continuum, so it's never an objection, but under the law, we can't use that. Well, that's a fair point, but yes, he was told there is no grand jury indictment, so he could have gamed the system and insisted on taking me to court, take me to court, and make the court tell me in person that no grand jury has met. But he didn't. He didn't. I was not the attorney at the time, but I think the court can respect the fact that he didn't play any game. It was known and made known to him there was no grand jury, no grand jury indictment, so he was willing to have it continued, which didn't waive anything. I mean, and if it did, then everyone would have to insist on going to court, and I know the court doesn't like gamesmanship in these situations. Okay, Mr. O'Donnell, thank you very much. You've saved your time for rebuttal. Thank you. Mr. Pastor. May it please the court. Joshua Pastor on behalf of the United States. In March 2020, there was a lot of uncertainty in this world based on the COVID pandemic. One thing that was certain was that this defendant appellant, a previously convicted sexual offender who was a child predator, needed to be arrested, and that took place on March 10, 2020, based on a criminal complaint. But within three days, the world shut down, and he was unable to be indicted until December 1, 2020. But there was no violation of the Speedy Trial Act as a result of uninterrupted ends of justice continuances granted as a result of that very same pandemic. And I'd like to first address the May 20th... Would the administrative orders be sufficient if the district judge and or the magistrate judge in a specific case didn't enter their own orders? I think they would. They were, except for the very first, didn't include the same language, but every administrative order after the first one was specifically incorporated by reference into the criminal cases pending in this district. And I think... You can enter a general order like that? Under these circumstances, these were emergency orders. I don't know that in regular times it would be sufficient, but in this case, in this district specifically, with respect to an emergency, perhaps a hurricane, those types of orders would be appropriate. Hurricane is sort of a different kind of circumstance, right? I mean, with a hurricane, you might not get much warning and it doesn't last for nine months, right? So it seems like... Let me ask it to you this way. What is your best precedent for your argument that administrative orders alone generally would be enough? Three other circuits have considered orders similar to this. It was the 6th, 8th, and the 9th. They're cited in our briefing, I believe on page 23. There's the Levkey case, the Torres case, and the Roush case. In each of those cases, districts within those circuits entered similar orders to those here and the courts upheld them. Finding under the circumstances where, in this case specifically, we didn't have any grand jury, the cases couldn't proceed. In the Olson case, a 9th Circuit case, the 9th Circuit ended up reversing a district court from the Central District of California. That district court decided to go against the general order issued there that had continued all jury trials. So it wasn't, in our case, a grand jury. It was a pettit jury. And that court dismissed the case with prejudice. The 9th Circuit reversed and said, based on this emergency and the fact that there were no jury trials, it was impossible for that case to proceed. And therefore, the ends of justice continuance should have been granted. But beyond the administrative orders here, we do have the five magistrate-judge continuances. And as discussed, the May 20th continuance, there was a lot of discussion of what the court put in the written record, but there was still discussion at the hearing itself. The magistrate-judge asked the government what was next. The government responded, at the time, it was waiting for grand jury to reopen. So it was evident in the record as to why the ends of justice continuance was being granted. And under this circuit's precedent, where the reasons are evident from the record, the court need not enunciate its findings specifically. And that's the Mathis case cited in our briefing, and it's also the Williams case cited in our briefing. I know in the briefing, there was also some discussion about the very first continuance and whether the magistrate-judge should have done a more searching inquiry of the government's bases. The very first continuance the government asked for was based on inability to confirm a quorum of grand jurors and to otherwise prepare for grand jury. But the magistrate-judge entered the order based not on those reasons, but rather on the protecting the health and safety of the court staff, counsel, and also to ensure that defendants who were detained had meaningful access to counsel. And all of those are valid bases for ends of justice continuances. And therefore that was not a clear error or an abuse of discretion on that first. But beyond the magistrate-judge continuances, the district court further entered a very detailed order elaborating on the factual findings. Under Zedner, the record is incomplete up until the time that the motion to dismiss is decided. And the court certainly can look to the district court's order and its additional factual findings that built upon the reasons provided by the magistrate-judges as to why the ends of justice was, the ends of justice outweighed the speedy trial rights of both the defendant and the public. And then on top of those, we had the administrative orders that were incorporated into every single criminal case and did by definition address case-specific needs because they addressed grand jury and a petty jury, both of which every criminal defendant is entitled to. So they, by definition, are incorporated into our very case-specific needs. But if the court has any further questions for me. I'm just curious whether there are many pending cases like this where this issue has been preserved in a conditional plea or maybe a subsequent trial or do you know? And I'm just talking about this district. I'm not aware, Your Honor, as to whether there were other cases that might end up before the jury. So you don't know one way or the other? I do not. Okay. What impact, if any, does the adjuntment's findings in the order denying the motion to dismiss have on the issues? I think they have a great, large impact. And I think there's been a little bit of conflation through this case of the difference between the findings and the reasonings. Each of the magistrate judges made the end of justice findings. The third one, I understand, was incorporated by reference. But then there's also the reasonings. And what Judge Altman did was really expand on the reasonings. The magistrate judges were brief in their reasonings. It was evident from the record, which is sufficient under this court's precedent. But Judge Altman certainly provided greater detail and really put some meat on the bone. You can, a district judge can make, as long as it's still within certain time parameters, can make an ends of justice determination after the fact, right? Sometimes. I think the ends of justice finding needs to be made contemporaneously. But I think as Sednar puts it, as long as it's in the judge's own head. So I don't know that a district court judge can come back and create its own ends of justice findings. But so long as the findings and reasonings are made at the time, then certainly they can come back and sort of build on them. All right. Lawyers at a hearing present arguments about a continuance, pro and con, and reasons, various reasons for it. The district judge grants a motion for a continuance, doesn't make any express findings at the time about which subsection he or she is proceeding under. In that sort of a circumstance, if the judge certifies that he or she was granting the continuance on ends of justice ground, a subsequent order will suffice. I think that's correct, Your Honor. Right. And so that's my question. My question is whether or not there's something in Judge Altman's last order which serves that function. The entire order really does. It goes through each continuance and provides an overall discussion of the COVID pandemic and how there are new grand juries and why that justified each and every ends of justice continuance granted in this case. Now, in a different sort, we have to write an opinion that covers not only this case, but others that may come in the same sort of general context. So in a district that is as wide ranging as this one geographically, can you enter, can the chief judge enter an administrative order that covers the entire district without having to account for potential future division by division differences? I think they can. And then like here, the judge still provided individual, excuse me, the order provided individual judges the discretion to proceed as they saw fit. But so for example, here, there was no grand jury throughout the district. At certain points, it did come back sort of, I guess, you know, county by county, Miami came back first and cases started to get indicted. But in other counties, that wasn't necessarily true. So it makes sense to have this broader order that accounts for these, for these sort of unusual circumstances that are necessary to ensure the fair administration of justice. What do you say to Mr. O'Donnell's argument that these orders, especially the earlier ones, didn't have the necessary findings? I think each of them had the requisite finding that the ends of justice outweigh the speedy trial rights of defendants and the public. The very first order also... I shouldn't have phrased the question the way I did. I'm sorry. His argument is not that they didn't contain that, most of them didn't contain the magic language, but that there was nothing to support that magic language or finding in some or all of the requisite orders. Well, with respect to the administrative orders, which was your question, the very first administrative order expressly provided that it was to prevent unnecessary travel, to prevent large gatherings, and it's all based on the COVID pandemic. Those reasonings were then incorporated into each and every other administrative order. With respect to the magistrate judge continuances, each of them, whether stated by the magistrate or within the record, provided sufficient reasons as to why the ends of justice finding was being granted. So, for example, the very first magistrate judge order was granted based on, again, the health and safety of litigants, court staff, and to ensure that defendants or the defendant who was incarcerated at the time had meaningful access. Judge Reinhardt did a comprehensive order when it started, and then everybody referred back to that. For the magistrates? Yeah, for the magistrates. I don't know that there's Reinhardt. I don't know. He did a comprehensive order. I don't know that the remaining magistrates referred back to the first magistrate order. They all had their own independent reasons for granting it. They're all the same. It was based on COVID and the lack of grand jury. For two of those, they specifically provided those reasons in the record, whether it's adopting or incorporating the administrative order, which itself continued the grand jury. See, it would have been better if they say we hereby incorporate that order. They don't. They say in pursuant to, in conjunction with. It would have been easier if they'd say expressly hereby incorporate every part of that prior order. They all say in conjunction with or pursuant to and all that kind of stuff, which you have to argue then you need to read them together. And that was certainly the intent of everybody. I think could the magistrates have used better language? Probably. I don't know that that makes any difference because only really the third May 20th site, specifically the administrative order, the second March 30th, 2020 order, the government had represented in its unopposed motion that the grand jury had been continued. And that was what the magistrate judge is relying on. So it's in the record. And again, under Mathis, where it's evident from the record, that's sufficient. The fourth continuance on July 6th, 2020, the judge specifically noted the pandemic, the COVID-19 pandemic increasing situations and that the grand juries had been postponed. And in the last magistrate judge continuance on October 21st, 2020, the defendant himself had informed the judge that there was still no pending grand juries. And then of course, overall, we were aware that the magistrates certainly knew that based on the administrative orders, that there was no sitting grand jury. And once there's no sitting grand jury, I'm not sure what further analysis is required because it's quite evident that you can't indict a defendant without a grand jury. Okay. Thank you very much, Mr. Pastor. Mr. O'Donnell. Thank you, Your Honor. As to Your Honor's question about Judge Altman's order affecting this, I think it has, as brilliant as Judge Altman is and was in his order, it has no effect on this legal issue because Judge Altman was not the one who made the rulings on the continuances. I do believe based on maybe some of the case law out there that had any of these magistrate judges or more specifically, just because we're addressing it more specifically, the May 20th, 2020 order, had that judge before Judge Altman had ruled on the motion to dismiss, had articulated on the record, either orally or in writing and supplanted or supplemented an order articulating and tethering his continuance to this pandemic and that that's why it meets the interests of justice and outweighs the public and defendant's interest. That could be considered and that would be persuasive for the government's position on this very procedural, technical issue that is intentionally, and the courts have articulated loudly, they need it to be, they want it to be. It is a very procedural issue that must be adhered to strictly and it was not here. So Judge Altman doesn't have the ability. He's ruling on the motion to dismiss the indictment and I thought as long as he put his findings on the record before he ruled on that, he does have the ability to add the ends of justice findings that would support all of this, even if you looked at his order alone and you're saying that's incorrect. I believe it is because he is not the judge who granted the continuance so he cannot speak. But he's the judge who's got to rule on the motion to dismiss the indictment and decide whether the trial clock has been told or not been told and what has happened here and I think he can look at all the administrative orders, he can look at all the magistrate judge's rulings and make findings himself and you're saying no he can't. He can't rule why Judge Reinhart on May 20th did not articulate his specific reasons for continuing it and how those reasons met the ends of justice procedurally and substantively and tying it to the pandemic. May 20th order is completely of any procedural or substantive issue that can be considered. All it is is administrative order as Judge Jordan points out, this is a vast jurisdiction so all you need to do to take care of it. It was also a vast uniform pandemic. Okay, so this wasn't a case where we're trying to see well a witness can't be located or we have these other problems while we need a continuous prosecutor comes in so that I need a continuance because of ABC or defendant comes in validly says I need a continuance so forth. The only basis for all of these continuances was the pandemic, correct? It was a universal continuance, unusual circumstance. Nobody had any doubt what the continuances were for. Is that correct? That is correct, Your Honor. Okay, all right. So we are dealing with that situation and you're telling me Judge Altman couldn't write, he wrote this very long order. He went into even how many people had died. It was, it's very thorough and comprehensive so he couldn't look at what the magistrate judges had done. I don't think we have to rely on Judge Altman's order. I think we have enough but that's just speaking for myself that you're saying he can't clean it all up basically and do a full and comprehensive order looking at what's happened. He doesn't have the power to do that. I think the judge that made the finding for the continuance must have done it according to all the case law or else we're setting a precedent that... Contemporaneously, you're saying it has to be done contemporaneously. Contemporaneously or before the motion to dismiss. So what is the problem then? I mean, just to sort of put a finer point on it, let's just assume for the sake of argument that every one of the magistrate judge continuances was invalid in some way. But at the end, Judge Altman looks at the whole thing again and says, these are all of the reasons why the ends of justice are furthered by granting this continuance or by having this, having been continued for this entire time. Can he not do it at that point and take care of any problems? I understand you're saying he can't look and think what was in the mind of Judge Reinhart at the time that Judge Reinhart wrote his order on the continuance. But independent of that, can he just go ahead then and independently, assuming all of the other orders are invalid for some reason or another, say and make a finding as long as it's justified and the disorder, it seems like it is, that the ends of justice outweigh the public interest and the defendant's interest in the speedy trial? No, I don't think so because that would be the same as saying, look, as Judge Hall has been mentioning and understandably so, look, this is a pandemic. Everyone knows it was dangerous. So we're not before the court saying, hey, there's a pandemic. All speedy trial is gone. We all get it. We all know how serious and dangerous it was. We're not saying that. We're saying that the law says the court that rules, the judge that rules on that continuance must articulate and use certain language and tether it. That's all. We're not saying the pandemic wasn't. But I'm sorry. It's OK. I'm not saying one of the general administrative orders. I'm saying Judge Altman's order in this case, where he's talking about this case in particular. Why is that not enough? It's not he's not talking about some general pandemic order. He is incorporating those, but that's just part of his reasoning. It's that's not like the be all and end all of his reasoning for determining that there's not a speedy trial violation and why it is that the continuance is warranted. Why is that not enough? Because he's not the judge that ruled and made the findings, I think. But I guess I'm trying to ask you, I understand we're accepting. We are accepting for purposes of this hypothetical that all of those other orders are invalid and that. And I'm granting you that Judge Altman doesn't know what's in their minds, so he can't make their orders valid by saying this is what they meant. But why can't he just decide the whole thing anew as of the point in time when he issues his first continuance, his first trial order, rather? I mean, maybe he can't, and that's fine. I'm just trying to get down to the nitty. We've got to write an opinion. So I'm asking you how you would frame that to explain why he can't do it for the first time. Then at that point in time, even if there were errors previously, and even if we don't rely at all on the prior orders that were entered. Because he's not the appellate court and he doesn't have the ability to clean up what someone, another judge had ruled upon that is not in compliance with strict procedural. But it's his case. I mean, it's his case, right? So he has the ability to look at the record. He has the ability to examine this case in particular and consider everything that's happened in the case from the start of the case. Why can he not? Let me ask it to you this way. Do you have any case law for that proposition that he cannot do an overall decision on the speedy trial motion at the time of the first continuance based on his knowledge of this specific case and what was going on in this specific district? Well, I think all the cases address that it's sort of the court that rules on that continuance. And I think that's why the appellate courts have so strongly demanded that the procedural rules be followed. So we're not sitting here and guessing because if we do go to the record of what happened on May 20th, for instance, the only thing that happened was the court mentions an administrative order and therefore just grants a speedy trial. And that does not in any way. Now, with all due respect, the court says that grand juries aren't sitting. They're being continued. Do you want to proceed on the information? No, I don't. Will you have a right? I mean, they talk about the pandemic still going on. I don't think that's totally fair. Okay. That's all that happens at that hearing. I don't know what the answer is, but that's. Well, there were several hearings, Your Honor. So just to be fair, I'm talking about the written order of May 20th. I agree, but the order. Right. Okay. It is brief, but there's lots going on at that hearing. And I do think these are valid, very valid issues for the issue is. Is it a dismissal with prejudice or without prejudice? Because if it's not dismissed, then any administrative order from however high up you want to go can take care of any speedy trial issue. And what you have here now by a ruling like that is exactly what the speedy trial rule is not supposed to be about. Before you sit down, I want to confirm that the issue here is only the rest to indictment. That's the grant sole ground. The motion was a speedy trial act violation of the 30 day period from arrest and to indictment. Yes, you're okay. We're not really talking about a jury trial. Not at all. That he was arrested and he wasn't indicted because it takes a lot more jurors to get an indictment than it does to have a trial. But I just to convene and get all this done in this serious situation. Yes, sir. Just that. That's it. The 30 day period arrest to indictment that you're. That's it. Thank you. I'll make sure I had that right. One more question. Oh, no. The administrative orders. Yes, were on their face, incorporated into every criminal docket in the Southern District of Florida, right? Well, in the administrative order, it says we're going to incorporate these into every order, which I think in and of itself is just not allowed and sets a horrible precedent that you could do that. No, I'm not asking you for the legal effect. I'm just saying the order itself said this order administrative order is getting filed and is going to be a part of every criminal docket in the Southern District of Florida, right? I think I think the language we use is incorporated by reference. I believe I don't want to be incorrect. I can pull the order. No, you don't have to. I mean, OK, I think we agree generally. Yes, I definitely agree generally that it says it's incorporated. OK, so to piggyback off of Judge Rosenbaum's question to you. A district judge sees that Judge Moore's administrative order gets put in his docket or her docket, right? Looks at it and says, I don't think that has quite the requisite findings. I'm going to supplement that order by adding what I think that order should have contained. You're saying that judge is not authorized to do that? Because he or she didn't draft the administrative order in the first place. I think the court could have incorporated this order and that probably would have complied, but they didn't. In fact, I'm looking on page three of the order. It says of the administrative order that you're referencing, it says this order and period of exclusion are incorporated by reference as a specific finding pursuant to 18 U.S.C. 3161878. In the record of each pending case where the Speedy Trial Act applies, see Zedner v. U.S. I don't think that this, I don't think the administrative order is allowed to do that. And in fact, in this particular case on May 20th, the court never even says it's incorporating that order. And I think Zedner itself says you're not allowed to just do things that aren't specifically on the record in the case that's being heard on the continuance issues. The ends of justice must be articulated on the record and in court, either orally or in writing. OK, all right. Thank you very much, Mr. O'Donnell. Mr. Pastor, thank you as well. We appreciate it. Thank you. I appreciate everyone's time.